IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARBARA SMITH,

           Plaintiff,

    v.

DIAMOND DEVELOPMENT &
INVESTMENTS, INC.
d/b/a Diamond Dave's Steakhouse,

          Defendant.

CIVIL ACTION FILE NO.

1:13-CV-02017-TCB-JFK

## FINAL REPORT AND RECOMMENDATION

Pending before the court is Plaintiff Barbara Smith's motion [Doc. 17] for entry of default judgment.  Following the court's order on the motion [Doc. 18], Plaintiff submitted a revised affidavit [Doc. 19] supplementing her request for front pay, back pay and compensatory damages.  Plaintiff also submitted a revised affidavit by her attorney [Doc. 20] in support of the request for attorney's fees and costs.  Although served with the motion and the supplemental affidavits, Defendant Diamond Development & Investments Inc. d/b/a Diamond Dave's Steakhouse ("Diamond Dave's") did not respond by June 16, 2014, as directed by the court.  Defendant has not answered the complaint resulting in the Clerk's Office entry of default, pursuant to Fed. R. Civ. P. 55(a), on March 4, 2014.  [Docket Entry dated March 4, 2014].

## I.    Procedural History

On June 17, 2013, Plaintiff filed a complaint against Defendant Diamond Dave's alleging a violation of 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, that is, alleging that Plaintiff Smith, a Caucasian, was terminated based on her inter-racial relationship with an African-American male also employed by Defendant. [Doc. 1]. In the complaint, Plaintiff alleged that she was employed by Defendant "on and off since 1997" and that "in December 2011, she became a General Manager" for Defendant. [Id. ¶ 11]. After Plaintiff began a relationship in April 2012 with Michael Fresh, an African-American kitchen manager working for Defendant, Plaintiff alleges that David Ulmer, Defendant's owner, contacted her and asked about the relationship, inquiring "are you fucking him?" [Id. ¶¶ 12-14]. Plaintiff initially denied the relationship, but after Mr. Ulmer allegedly threatened to fire her if she did not answer his questions, Plaintiff admitted the relationship. Plaintiff claims Mr. Ulmer told her that a relationship between employees was against company policy; however, Plaintiff was not provided with such a policy and other employees were involved in romantic relationships with co-workers. Plaintiff alleges that Mr. Ulmer was aware of these relationships. [Id. ¶¶ 14-17].

AO 72A
(Rev.8/82)

Plaintiff contends that Mr. Ulmer "continued to badger" her, asking if she was on drugs and advising her "if you lay down with a dog, you get fleas." He allegedly advised Plaintiff that "she had no business dating a nigger." [Id. ¶¶ 18-19]. Plaintiff claims that in June 2012 Mr. Ulmer met with Mr. Fresh and her to discuss the relationship and that they informed Mr. Ulmer that the relationship was continuing. Mr. Ulmer allegedly advised them that "they were both vital employees and neither of their jobs were in jeopardy." [Id. ¶¶ 20-21]. Mr. Ulmer declined Plaintiff's offer to transfer to another restaurant. [Id. ¶ 22]. Plaintiff alleges that Mr. Ulmer continued to make comments expressing displeasure with the inter-racial relationship. [Id. ¶ 24]. On July 19, 2012, Defendant terminated Plaintiff's employment for allegedly allowing a guest to have a $24.00 complimentary tab. Plaintiff claims that Defendant's policy allowed a General Manager to allow up to a $25.00 complimentary tab. [Id. ¶ 25]. In the prayer for relief, Plaintiff seeks damages for mental pain and suffering, punitive damages, lost wages, salary, employment benefits or other lost compensation and interest thereon, reinstatement or front pay, declaratory relief and attorney fees and costs. [Doc. 1].

On November 18, 2013, Defendant Diamond Dave's filed a motion to dismiss for insufficient service of process, which was opposed by Plaintiff. [Docs. 7, 11]. On January 10, 2014, this court entered a report and recommendation recommending that

3

the motion to dismiss be denied and that, if the District Court adopted the report and recommendation, Defendant file an answer within fourteen days.   [Doc. 12]. Defendant did not file objections to the report and recommendation which was adopted by the District Court, denying the motion to dismiss, on January 28, 2014.  [Doc. 14]. Defendant's answer to the complaint was due on or about February 14, 2014.  <u>See</u> Fed. R. Civ. P. 12(a)(4)(A).  When Defendant did not answer the complaint, on February 28, 2014, Plaintiff moved for entry of default.  [Doc. 15].  The Clerk entered the default on March 4, 2014.  [Docket Entry dated March 4, 2014].  Plaintiff filed the motion for default judgment which Defendant has not opposed.  [Doc. 17].

In the motion for default judgment, Plaintiff's attached affidavit tracks the averments in the complaint regarding Mr. Ulmer's actions after learning about Plaintiff's inter-racial relationship with Mr. Fresh.  [Doc. 17, Smith Affidavit ("Aff.") ¶¶ 2-16].  And in her supplemental affidavit, Plaintiff states that she was earning $600.00 per week when she was terminated from Defendant on July 19, 2012, and that she earned approximately $16,603.31 working approximately 34 to 36 hours per week at $10.00 per hour for Cellular Communications, Inc., from July 23, 2012, until June 10, 2013.  [Doc. 19, Smith Aff. ¶¶ 18-22].[1]  Plaintiff states that she resigned from

---

[1]Plaintiff states that she obtained employment at Cellular Communications through her friendship with the director of sales and operations.  [<u>Id.</u> ¶ 19].

Cellular Communications due to "reduction in pay [to $8.00 per hour], being falsely accused of theft, and being constantly moved around from store to store within the company." [Id. ¶¶ 22-23].

After resigning from Cellular Communications, Plaintiff received unemployment benefits of $204.00 per week from July 2013 through October 2013 and then emergency unemployment benefits of $197.00 per week until December 28, 2013. [Id. ¶ 24]. She advises that during this time period, she inquired about and interviewed for a number of jobs with no success. [Id. ¶ 25]. Beginning January 2014, Plaintiff along with her partner started operating a business cleaning homes. She has earned $3,547.50 since January 2014. [Id. ¶ 26].

Plaintiff provided a quarterly statement of her lost wages reduced by her earnings, and she calculates her net lost wages as $35,351.19 as of the end of the second quarter of 2014. [Id. ¶¶ 27-28].[2] Plaintiff also provided a pre-judgment interest calculation, from July 19, 2012, through May 8, 2014, at the prime rate of 3.25%, on the lost wages for a total of $2,100.02. [Id. ¶ 29].

---

[2] Plaintiff correctly does not include within this calculation the unemployment benefits that she received in the third and fourth quarters of 2013. [Id. ¶ 27]. "The Eleventh Circuit has held that unemployment benefits may not be reduced from a Title VII back pay damages award." Matthew v. Hi*Tech Electronic Displays, Inc., 2005 WL 5950966, at *8 (M.D. Fla. October 17, 2005) (citing Brown v. A.J. Gerrard Manufacturing Co., 715 F.2d 1549, 1550 (11th Cir. 1983)).

AO 72A
(Rev.8/82)

Plaintiff stated that she has "suffered greatly from the financial and emotional distress caused by the actions of Mr. Ulmer" and that she "could not in good conscience accept any offer of reinstatement . . . due to the prior vile behavior of Mr. Ulmer and the expectation that this behavior would continue in the future." [Id. ¶ 30]. For this reason, she is seeking an award of two years of front pay in lieu of reinstatement, which based on her $600.00 weekly salary would be a total of $62,400.00. [Id. ¶ 31].

Plaintiff finally states that after her termination from Diamond Dave's, she had to move from her apartment and lost her 2012 Chevrolet Cruze vehicle due to inability to make payments. Although not otherwise ready to do so, she moved in with her boyfriend to share expenses. However, Plaintiff's nine year old daughter lives with Plaintiff's sister for financial and stability purposes. [Id. ¶ 32]. Plaintiff is receiving food stamps, and her daughter is receiving Medicaid insurance. [Id.]. For these reasons, Plaintiff is seeking (conservatively) $10,000.00 in compensatory damages. [Id. ¶ 35].[3]

Also included with the motion is the affidavit of Paul J. Sharman, Plaintiff's attorney. [Doc. 17, Sharman Aff.]. As noted, this conclusory affidavit has been supplemented as follows. [Doc. 20, Sharman Aff.]. Mr. Sharman, who owns The

---

[3]This affidavit does not include paragraphs numbered 33 and 34.

Sharman Law Firm LLC, began representing Plaintiff in the summer of 2012 in this lawsuit. [Id. ¶¶ 2-3]. He primarily represents plaintiffs in employment discrimination and wage/hour claims and lawsuits. [Id. ¶ 2]. His hourly rate is $250.00 which is, according to the Fulton County Daily Report, on the lower end of the rates for Atlanta employment attorneys with similar levels of skill, experience and reputation. [Id. ¶¶ 5-6].[4]

In this case, from August 23, 2012, through May 23, 2014, he worked 38.2 hours on Plaintiff's case at the hourly rate of $250.00, which is evidenced by the billing records attached to the affidavit, resulting in a total of $9,550.00 in attorney's fees. [Id. ¶ 7]. Mr. Sharman also incurred $795.00 in expenses, including, $400.00 federal court filing fee, $245.00 to Atlanta Legal Services for initial service attempts in August and September 2013, and $150.00 to Liz Shepherd for service in October 2013. [Id. ¶ 8].

The motion for default judgment seeks the following damages: unspecified damages for mental and emotional suffering, unspecified punitive damages, $35,600.00 in back pay, two years of front pay in the amount of $62,400.00, $8,600.00

---

[4]Mr. Sharman is a 2007 graduate of the Georgia State University School of Law, where he served as Associate Editor of the Law Review. He was admitted to practice in Georgia in 2007 and, after practicing in other employment law firms, opened his law firm in 2011. (See http://www.avvo.com/attorneys/30022-ga-paul-sharman-3343782.html, last visited June 17, 2014).

AO 72A
(Rev.8/82)

in attorney's fees, $720.00 in costs, unspecified pre-judgment interest and declaratory relief that Defendant has violated Plaintiff's statutory rights.   [Doc. 17 at 2-3]. However, the court treats the supplemented affidavits as amending the damage request to the following:  $35,352.19 in back pay with $2,100.02 in pre-judgment interest as of May 8, 2014; $62,400.00 in front pay (2 years); $10,000.00 compensatory damages; no punitive damages; and $9,550.00 in attorney's fees and $795.00 in costs.

Additional facts will be set forth as necessary during discussion of Plaintiff's motion for default judgment.

## II.   Discussion

Although a default has been entered in this case, "[a] motion for default judgment is not granted as a matter of right.  Rather, Fed. R. Civ. P. 55 vests the Court with discretion to determine whether the judgment should be entered." Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004); see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court.  Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered."); Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd., 175 F.R.D. 658, 660-61 (S.D. Cal. 1997) ("A defendant's default does not automatically entitle plaintiff to judgment. . . .   In

8

assessing liability, the complaint's allegations are taken as true. . . .  In assessing

damages, the court must review facts of record, requesting more information if

necessary, to establish the amount to which plaintiff is lawfully entitled upon judgment

by default.").

> The following guidelines assist a court in exercising its discretion:
>
> The Court must have personal and subject-matter jurisdiction over the defendant.
> The presence of the Court's jurisdiction must appear on the face of the complaint.
> The well-pleaded *factual* allegations of the Complaint are accepted as true, except those relating to the amount of damages.
> However, the Complaint must state a cause of action.
> While the well-pleaded *facts* alleged in the Complaint are deemed admitted, plaintiff's *conclusions* of law are not, and the Court may grant only the relief for which a sufficient basis is asserted (hence, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover).
> Once the Court determines that a default judgment should be entered, it then determines the amount and character of the recovery that should be awarded.
> Generally, damages may be awarded without a hearing if they are for a liquidated amount.
> However, a plaintiff must also establish that the amount is reasonable under the circumstances.
> For damages, the Court can take evidence when necessary, or compute them from the facts of the record.
> Neither the plaintiff nor the defendant has a right to a jury trial on the issue of damages.

Pitts, 321 F. Supp. 2d at 1356 (citing Patray v. Northwest Publishing, Inc., 931 F.

Supp. 865, 868-70 (S.D. Ga. 1996)) (emphasis in original).  The court will first

determine whether the factual allegations pled in the complaint filed in this case state a cause of action for employment discrimination.

### a.    Employment Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against her. See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981). Plaintiff seeks to use § 1981 as a parallel basis for relief with her Title VII claim. Section 1981 provides, in pertinent part: "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The elements required to establish a § 1981 claim mirror those required for a Title VII claim. As the Eleventh Circuit has noted, "Both of these statutes have the same requirements of proof and use the same analytical framework . . . ." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); accord Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1347 n.1 (11th Cir. 2007). "The law is well established that discrimination in employment based upon interracial marriage or interracial association is prohibited under both Title VII of the Civil Rights Act of 1964, as amended, 42

10

U.S.C.A. §§ 1981a, 2000e through 2000e-17, and 42 U.S.C.A. § 1981." <u>Sims v. Montgomery County Commission</u>, 934 F. Supp. 1314, 1329 (M.D. Ala. 1996) (citing, *inter alia,* <u>Parr v. Woodmen of the World Life Ins. Co.</u>, 791 F.2d 888, 890-91 (11th Cir. 1986)).

"A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." <u>Rioux v. City of Atlanta, Georgia</u>, 520 F.3d 1269, 1274 (11th Cir. 2008). There is no direct evidence of discrimination in this case, such as, Mr. Ulmer explicitly threatening to fire Plaintiff because of the inter-racial relationship; accordingly, the court must determine whether Plaintiff has stated a cause of action based on circumstantial evidence of racial discrimination. Because Plaintiff Smith relies on circumstantial evidence, the court will use the framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817, 1824-25 (1973). Under this framework, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove

11

that the legitimate reason offered by the defendant was a pretext for discrimination. See id.

Ordinarily, a plaintiff establishes a *prima facie* case of discrimination by presenting evidence that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably; and (4) she was qualified to do the job. See Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006). Plaintiff's allegations of fact in the complaint establish that she was a member of a protected class, that is, involved in an inter-racial relationship, that she was subjected to an adverse employment action, that is, her termination, and that, having held the General Manager position for a number of years, she was qualified for the job. Plaintiff does not allege facts, however, establishing that Defendant treated similarly situated employees not involved in such a relationship more favorably. This is not fatal to Plaintiff's claim if she has articulated other evidence establishing a discriminatory intent.

The Supreme Court has explained, "The *prima facie* case method established in McDonnell Douglas was never intended to be rigid, mechanized, or ritualistic." United States Postal Serv. Bd. of Governors v. Aikens, 103 S. Ct. 1478, 1482 (1983) (quoting Furno Construction Corp. v. Waters, 98 S. Ct. 2943, 2949 (1978)) (internal quotation

marks omitted).  And the Eleventh Circuit has held that the McDonnell Douglas framework, while "a valuable tool for analyzing evidence in cases involving alleged disparate treatment, . . . is only a tool."  Pinder v. John Marshall Law School, LLC, - - - F. Supp. 2d - - -, 2014 WL 1292553, at *41 (N.D. Ga. March 31, 2014) (citing Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1184 (11th Cir. 1984)).  "The 'ultimate question' is not whether a plaintiff has established a *prima facie* case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'"  Id. (quoting Nix, 738 F.2d at 1184).  Accord Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) ("no matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper"); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.") (emphasis omitted).

The undisputed facts alleged in the complaint raise the necessary inference of discrimination.  After Plaintiff began a relationship in April 2012 with Michael Fresh, an African-American kitchen manager working for Defendant, David Ulmer, Defendant's owner, contacted Plaintiff and asked her about the relationship, inquiring "are you fucking him?"  [Doc. 1 ¶¶ 12-14].  Plaintiff initially denied the relationship,

but, after Mr. Ulmer threatened to fire her if she did not answer his questions, Plaintiff admitted the relationship.  Mr. Ulmer told her that a relationship between employees was against company policy; however, Plaintiff was not provided with such a policy and other employees were involved in romantic relationships with co-workers, as Mr. Ulmer was well aware.  [Id. ¶¶ 14-17].

Mr. Ulmer "continued to badger" Plaintiff, asking if she was on drugs and advising her "if you lay down with a dog, you get fleas" and stating to Plaintiff that "she had no business dating a nigger."  [Id. ¶¶ 18-19].  In June 2012, Mr. Ulmer met with Mr. Fresh and Plaintiff to discuss the relationship, and they advised Mr. Ulmer that the relationship was continuing.  [Id. ¶¶ 20-21].  Mr. Ulmer continued to make comments expressing displeasure with the inter-racial relationship.  [Id. ¶ 24].  And, on July 19, 2012, Defendant terminated Plaintiff's employment for allowing a guest to have a $24.00 complimentary tab.  Plaintiff claims that Defendant's policy allowed a General Manager to allow up to a $25.00 complimentary tab.  [Id. ¶ 25].

These facts stand un-rebutted, and Plaintiff has established a claim for discrimination pursuant to Title VII and § 1981.  Accordingly, the court recommends to the District Court that a default judgment be entered on the causes of action asserted pursuant to Title VII and § 1981 for discriminatory termination.

AO 72A
(Rev.8/82)

**b.     Damages**

Having determined that a default judgment is properly entered against Defendant on the employment discrimination claims in the complaint, the court "'will determine the amount and character of the recovery that should be awarded.'"  Patray, 931 F. Supp. at 869 (citation omitted).  "'It is a proper exercise of judicial power for a court upon default, by taking evidence when necessary. . ., to fix the amount which the prevailing party is lawfully entitled to recover and then give judgment accordingly.'" Id. at 869-70 (citation omitted).  In this respect, the court "has considerable latitude in determining the amount of the damages." Id. at 870.  "However, a plaintiff 'cannot satisfy the certainty amount simply by requesting a specific amount.  [She] must also establish that the amount is reasonable under the circumstances.'" Id. at 869 (citations omitted); see also Wright v. Holifield, 2012 WL 5933032, at *2 (S.D. Ala. November 26, 2012) ("The law is clear, however, that [the defendant's] failure to appear and the clerk's entry of default do not automatically entitle [the plaintiff] to a default judgment in the requested (or any) amount.").  "Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985) (citation omitted).  The court will apply these guidelines to the Plaintiff's request for back pay with

15

prejudgment interest, for front pay, for compensatory damages and for attorney's fees and costs.

### 1.    Back Pay

Section 42 U.S.C. § 2000e-5(g)(1) provides in pertinent part that, where the employer engages in an discriminatory employment practice, the award may include "back pay (payable by the employer . . . responsible for the unlawful employment practice)," however, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1). "Plaintiffs who are successful in their Title VII cases are presumptively entitled to back pay. . . . However, again the awarding of back pay is not automatic and is determined by the difference between the actual wages earned and the amount of wages that the individual would have earned if retained in her position." Lee v. HQM of Fort Myers, LLC, 2012 WL 3545700, at *3 (M.D. Fla. July 26, 2012).

Plaintiff's affidavit establishes that she was earning $600.00 per week when fired from Defendant's employment on July 19, 2012. [Doc. 19, Plaintiff's Aff. ¶18]. Through the end of June 2014, that is, the second quarter of 2014, the amount of lost wages totals $55,500.00. [Id. ¶ 27]. Plaintiff also states that, through her friendship with the director of sales and operations at Cellular Communications, she obtained

16

employment on July 23, 2012, and worked for that employer until June 10, 2013, earning a total of $16,603.31.  [Id. ¶¶ 19-22].  Plaintiff states that she resigned from this employment due to reduction in pay, being falsely accused of theft, and being constantly moved around from store to store.  [Id. ¶ 23].

The question arises whether Plaintiff's back pay award should be reduced by the amount she would have earned had she remained employed by Cellular Communications instead of resigning.  When a discharged Title VII claimant finds "suitable employment" but then quits without a justifiable reason, "the amount [she] would have earned had [she] not quit" should be excluded from back pay.  NLRB v. Miami Coca-Cola Bottling Co., 360 F.2d 569, 575 (5ᵗʰ Cir. 1966);[5] see also Reiner v. Family Ford, Inc., 146 F. Supp. 2d 1279, 1286 (M.D. Fla. 2001).  Based on the record in this case, the court cannot find that Plaintiff had "'compelling or justifying reasons'" for quitting her employment with Cellular Communications.  Sennello v. Reserve Life Ins. Co., 667 F. Supp. 1498, 1514 (S.D. Fla. 1987) (quoting Brady v. Thurston Motor Lines, Inc., 753 F.2d 1269, 1278 (4ᵗʰ Cir. 1985)).  The court, therefore, recommends that her back pay award be reduced by the amount she would have earned had she

---

[5]Although this case involved the National Labor Relations Act and not Title VII, the Supreme Court has stated that Title VII's "back pay provision was expressly modeled on the backpay provision of the National Labor Relations Act."  Albemarle Paper Co. v. Moody, 95 S. Ct. 2362, 2372 (1975).

remained with that employer, assuming a minimum of 34 hours per week at $8.00 per hour.[6]  If the reduction is adopted by the District Court, Plaintiff should be required to recalculate her back pay with this salary included on a quarter-by-quarter basis as of the date of entry of the District Court's order.  See Johnson v. TMI Mgmt. Systems, Inc., 2012 WL 3257809, at *2 (S.D. Ala. August 7, 2012) ("the appropriate calculation methodology for back pay awards in a Title VII case calls for computation on a quarter-by-quarter basis") (citing Kendrick v. Jefferson County Bd. of Educ., 13 F.3d 1510, 1512 (11th Cir. 1994)).

Plaintiff also seeks pre-judgment interest on the award of back pay.  She has provided information to calculate those damages.  Plaintiff states that the interest should be calculated from July 19, 2012, through May 8, 2014, at the prime rate of 3.25%, for a total (based on her calculation of back pay) of $2,100.02.[7]  [Doc. 19, Plaintiff Aff. ¶ 29].  "[T]he Eleventh Circuit [has] held that, in analyzing the issue of whether prejudgment interest on back pay awards should be awarded to prevailing

---

[6]If the court's recommendation on the reduction to the back pay award being requested is adopted, the amount Plaintiff earned from operating the house cleaning business in 2014 should not be included in the amount earned in mitigation to further reduce her back pay award, on the assumption that she would not have engaged in that business due to being otherwise employed.

[7]The court notes that the dates used by Plaintiff are confusing.  Although she calculated her award of back pay through the end of the second quarter of 2014, that is, June 30, 2014, Plaintiff only calculated prejudgment interest through May 8, 2014.

Title VII claimants, the district court should look to the practice under the National Labor Relations Act ('NLRA') with respect to prejudgment interest on back pay awards." Richardson v. Tricom Pictures & Productions, Inc., 334 F. Supp. 2d 1303, 1315 (S.D. Fla. 2004) (citing Smith v. American Serv. Co. of Atlanta, Inc., 796 F.2d 1430, 1432-33 (11th Cir. 1986)). Courts in the Eleventh Circuit Court of Appeals have acknowledged that decisions in this circuit are less than clear as to how to in fact apply the NLRA. See Armstrong v. Charlotte County Bd. County Com'rs, 273 F. Supp. 2d 1312, 1319 (M.D. Fla. 2003). However, the court agrees with the district court in Armstrong that the "'IRS prime rates' that prevailed during the period of the discrimination" should be used to calculate prejudgment interest. Id. (citation omitted); and see Richardson, 334 F. Supp. 2d at 1318 ("The NLRA method is to use the adjusted federal rate established by the IRS in accordance with 26 U.S.C. § 6621."). That is the calculation utilized by Plaintiff. [Id. ¶ 29]. If the court determines that a back pay award is appropriate, once the amount of that award is calculated, the prejudgment interest, which this court recommends be awarded, should be recalculated by Plaintiff as of the date of entry of judgment.

### 2. Front Pay

Plaintiff seeks front pay for two years in the amount of $62,400.00 in lieu of reinstatement. [Doc. 17 at 3]. "The Eleventh Circuit has held that '[i]n addition to

19

back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay.'" Armstrong, 273 F. Supp. 2d at 1315 (citations omitted); accord Lee, 2012 WL 3545700, at *4 ("In addition to back pay, a prevailing party is entitled to either reinstatement or front pay."). "'[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'" Armstrong, 273 F. Supp. 2d at 1315 (citation omitted). "Although we presume that reinstatement is the appropriate remedy in a wrongful discharge case, the district court may award front pay in lieu of reinstatement if extenuating circumstances warrant such relief." Lee, 2012 WL 3545700, at *4 (citation and internal quotation marks omitted); accord Armstrong, 273 F. Supp. 2d at 1315. "'In deciding whether to award front pay, rather than reinstatement, courts look to whether discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy, . . . the defendant's management [had] intimidated or threatened the plaintiff, . . . or the termination had harmed the plaintiff's emotional well-being[.]'" Richardson, 334 F. Supp. 2d at 1318 (citation omitted); see also Armstrong, 273 F. Supp. 2d at 1315 (same).

Although there is "some risk of uncertainty" in the award of front pay, "[t]hat uncertainty does not in and of itself preclude a front-pay award." Armstrong, 273 F. Supp. 2d at 1315. However, a plaintiff must still provide evidence of mitigation of

damages, see Richardson, 334 F. Supp. 2d at 1318, and she must "produce competent evidence suggesting that [her] injuries have narrowed the range of economic opportunities available to [her] or that [her] injury has caused a diminution in [her] ability to earn a living[,]" Id. at 1319 (citations and internal quotation marks omitted). Plaintiff must establish that any award of back pay or other compensatory damages will not fully compensate her for the harm caused by Defendant's conduct.   Id. (quoting Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1529 (11th Cir. 1991) ("Front pay . . . is appropriate only when the other damages awarded will not fully compensate the plaintiff for his [or her] injury.") (superseded by statute on other grounds); E.E.O.C. v. Joe's Stone Crab, Inc., 15 F. Supp. 2d 1364, 1380 (S.D. Fla. 1998) ("Because a monetary award of front pay is calculated to end on the date that the discrimination victim attains the position she would have been in but for the discrimination, front pay is appropriate only when the other damages awarded do not fully compensate the plaintiff.")).

In support of an award of front pay in lieu of reinstatement, Plaintiff states that she has "suffered greatly from the financial and emotional distress caused by the actions of Mr. Ulmer" and that she "could not in good conscience accept any offer of reinstatement . . . due to the prior vile behavior of Mr. Ulmer and the expectation that

21

this behavior would continue in the future." [Id. ¶ 30].  For this reason, she is seeking an award of two years of front pay in lieu of reinstatement, which based on her $600.00 weekly salary would be a total of $62,400.00.  [Id. ¶ 31].  This evidence satisfies Plaintiff's initial burden of demonstrating that reinstatement is not appropriate in this case.

However, Plaintiff has not otherwise supported her request for front pay.  "The same mitigation of damages analysis applies to back pay and front pay awards." Richardson, 334 F. Supp. 2d at 1318.  Plaintiff's resignation of her employment at Cellular Communications, without (as the court has found) "'compelling or justifying reasons[,]'" Sennello, 667 F. Supp. at 1514 (citation omitted), is one reason to deny her request for front pay.  See Richardson, 334 F. Supp. 2d at 1318-19 (citing cases denying award of front pay when the plaintiff voluntarily left new employment after unlawful termination).  Additionally, even if the fact that Plaintiff left her employment in June 2013 is not considered, Plaintiff failed to "produce competent evidence suggesting that [her] injuries have narrowed the range of economic opportunities available to [her] or that [her] injury has caused a diminution in [her] ability to earn a living." Id. at 1319 (citations and internal quotation marks omitted).  Plaintiff also failed to present evidence that an award of back pay and of compensatory damages will

22

not fairly compensate her for the discriminatory conduct in this case.  Id. at 1319.  And,
finally, given the uncertainty of employment in the restaurant industry, as supported
by Plaintiff's affidavit when she states, "I worked for Defendant . . . *on and off* since
1997" [Doc. 19, Plaintiff's Aff. ¶ 2 (emphasis added)], the court does not recommend
an award front pay on the record in this case.

For these reasons, the court recommends that front pay not be awarded in this
case.

### 3.   Compensatory Damages[8]

Plaintiff also seeks compensatory damages.  As noted, Plaintiff produced
circumstantial evidence of intentional discrimination by Mr. Ulmer, the owner of
Defendant Diamond Dave's, based on Plaintiff's inter-racial relationship and resulting
in the termination of her employment.  [Id. ¶¶ 3-16].  She also presented evidence of
the financial loses and emotional pain she suffered after her termination.  In addition
to her general statement that she "suffered greatly from the financial and emotional
distress caused by" Mr. Ulmer's actions [Id. ¶ 30], Plaintiff stated that she had to move
from her apartment and lost her 2012 Chevrolet Cruze due to inability to make

---

[8]Plaintiff is apparently no longer seeking punitive damages as she makes no
reference to this category of damages in her supplemental affidavit. [Doc. 19, Plaintiff
Aff.].

23

payments.  Although not otherwise ready to do so, she moved in with her boyfriend to share expenses.  However, Plaintiff's nine year old daughter lives with Plaintiff's sister for financial and stability purposes.  [Id. ¶ 32].  Plaintiff is receiving food stamps, and her daughter is receiving Medicaid insurance.  [Id.].  Plaintiff is seeking at least $10,000.00 in compensatory damages.  [Id. ¶ 35].

Section 1981a provides for limitations on the amount awarded in Title VII discrimination cases for the combined total of compensatory and punitive damages, see 42 U.S.C. § 1981a(b)(3); however, Plaintiff has also brought her lawsuit pursuant to 42 U.S.C. § 1981 which does not place such limitations on these damages, see Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1284-85 (11th Cir. 2008) ("in contrast to Title VII, 'Congress has not seen fit to impose any recovery caps in cases under § 1981 . . ., although it has had ample opportunity to do so since the 1991 amendments to Title VII'") (citation omitted).  "Although compensable damage must be proven, . . . general compensatory damages, as opposed to special damages, need not be proven with a high degree of specificity.  Compensatory damages 'may be inferred from the circumstances as well as proven by testimony.'"  Ferrill v. The Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) (citation omitted).  Compensatory damages under § 1981a "encompass emotional pain, suffering,

24

inconvenience, mental anguish, loss of enjoyment of life, and other factors, as prescribed by 42 U.S.C. § 1981a(b)(3)." <u>Johnson</u>, 2012 WL 3257809, at *3; <u>see also</u> <u>Dismukes v. J&R Entertainment, LLC</u>, 2012 WL 5187761, at *1 (M.D. Ala. October 19, 2012) (noting that a civil rights litigant "'may be compensated for intangible, psychological injuries as well as financial, property, or physical harms'") (citation omitted).

The court may infer from Defendant's intentionally discriminatory conduct that Plaintiff suffered some intangible harm, <u>see</u> <u>Dismukes</u>, 2012 WL 5187761, at *1 (noting that as a matter of common sense, emotional distress is both a predictable and foreseeable consequence of discrimination), and Plaintiff's affidavit establishes that she suffered additional, although unspecified as to amount, pecuniary damages due to the loss of her apartment and vehicle.  She is also living separately from her daughter due to her finances, which the court infers is difficult and emotionally stressful.  The court finds that the record before the court supports the entry of an award for compensatory damages.  <u>See, e.g.</u>, <u>Ferrill</u>, 168 F.3d at 476 (noting that the plaintiff's testimony that she was humiliated by the employer's discriminatory actions supported imposition compensatory damages); <u>Johnson</u>, 2012 WL 3257809, at **3-4 (finding default judgment award of compensatory damages supported by the plaintiff's

25

testimony of distress, embarrassment, stress, financial strain and emotional hardship due to her employer's intentional discrimination).

Although Plaintiff is seeking $10,000.00 in compensatory damages, due to the fact that the court recommends reducing her back pay award and no award of front pay, the court recommends that Plaintiff be awarded an amount of compensatory damages that equals the final calculation of her back pay award. This amount will compensate Plaintiff for the emotional pain and suffering and pecuniary loses suffered by Plaintiff due to Defendant's intentionally discriminatory conduct.

### 4.    Attorney's Fees and Costs

Plaintiff also seeks attorney's fees in the amount of $9,550.00 and costs in the amount of $795.00. [Doc. 20, Sharman Aff. ¶¶ 7-8]. In support of this request, Plaintiff offers the supplemental affidavit of her attorney in this case, Paul J. Sharman. [Doc. 20, Sharman Aff.]. Mr. Sharman, who owns The Sharman Law Firm LLC and who primarily represents plaintiffs in employment discrimination and wage/hour claims and lawsuits, began representing Plaintiff in the summer of 2012 in this lawsuit. [Id. ¶¶ 2-3]. His hourly rate is $250.00 which is, according to the Fulton County Daily Report, on the lower end of the rates for Atlanta employment attorneys with similar levels of skill, experience and reputation. [Id. ¶¶ 5-6]. In this case, from August 23,

2012, through May 23, 2014, he worked 38.2 hours at the hourly rate of $250.00 which is evidenced by the billing records attached to the affidavit resulting in a total of $9,550.00.  [Id. ¶ 7].

With regard to attorney's fees, the Eleventh Circuit has held: "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  This amount is referred to as the "lodestar." Id.  "'A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.' . . . The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.' . . . By 'satisfactory evidence,' we mean 'more than the affidavit of the attorney performing the work.'" Id. (citation omitted); see also Jan R. Smith Construction Co. v. DeKalb County, 18 F. Supp. 2d 1365, 1374 (N.D. Ga. 1998) (same).  In appropriate circumstances, the court "may rely on its own experience and the affidavit of counsel" to determine the reasonableness of the hourly rate.  See Lee, 2012 WL 3545700, at *4.  And the amount of time that is compensable is the number of hours reasonably expended on the litigation.  Loranger, 10 F.3d at 782.  "The 'fee applicant bears the burden of establishing entitlement and

27

documenting the appropriate hours'" worked, and, accordingly, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . .  A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.'"  American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999) (citation omitted); see also Stallworth v. Imani Environmental Group, Inc., 2013 WL 5930499, at *4 (M.D. Ala. November 5, 2013) ("Plaintiff's counsel has submitted a detailed invoice for his fees in representing Plaintiff in this action.").

After a review of Mr. Sharman's affidavit, the attached detailed billing statement and the information about Mr. Sharman's legal training and experience (see http://www.avvo.com/attorneys/30022-ga-paul-sharman-3343782.html, last visited June 17, 2014), as well as based on the court's experience in overseeing the litigation of employment discrimination cases, the court finds that Mr. Sharman's hourly rate of $250.00 is reasonable and that the number of hours expended on this litigation, 38.2, is also reasonable.  Likewise, Plaintiff has presented a sufficiently detailed affidavit and documentation [Doc. 20, Sharman Aff. ¶ 8] supporting her request for costs in the

amount of $795.00.  See <u>Stallworth</u>, 2013 WL 5930499, at *4 ("Plaintiff also properly supports his requests for costs for postage and the filing fee, and those costs totaling $376.01 will be awarded.").

For these reasons, the court recommends that Plaintiff be awarded $9,550.00 in attorney's fees and $795.00 in costs.

## III.   Conclusion

For the foregoing reasons and cited authority,  the court **RECOMMENDS** that the motion [Doc. 17] for default judgment be **GRANTED** on the Title VII and § 1981 claims in Plaintiff's complaint, and the court **RECOMMENDS** that Plaintiff's requests for damages be **GRANTED IN PART AND DENIED IN PART** and that: (1)  Plaintiff be awarded back pay damages, with prejudgment interest, based on Plaintiff's lost wages of $55,500.00 **reduced** by the amount that she would have earned through the second quarter of 2014 had she remained employed at Cellular Communications; (2) Plaintiff not be awarded front pay; (3) Plaintiff be awarded compensatory damages in the amount equal to the final calculation of her back pay award; and (4) Plaintiff be awarded $9,550.00 in attorney's fees and $795.00 in costs.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule

29

72.1, and Standing Order 08-01 (N.D. Ga. June 12, 2008).  The Clerk, therefore, is

**DIRECTED** to terminate the reference to the Magistrate Judge.

      **SO RECOMMENDED THIS** 19th day of June, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

30